ELIZA STANTON, APPELLEE, V. EDWARD C. STANTON ET AL., APPELLEES: KENESAW STATE BANK, APPELLANT.

276 N. W. 180

FILED NOVEMBER 26, 1937.   No. 30103.

*Tibbets, Canaday & Hewitt,* for appellant.

*King & Bracken, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

PAINE, J.

The Kenesaw State Bank, appellant, insists that the lower court erred in finding that an indebtedness owing

by an heir to an estate was a first lien upon such heir's distributive share of the real estate in such estate, and was superior to the lien of a judgment secured by said bank against such heir.

There is no fact in dispute in this case. All of the evidence is found in a stipulation of the facts, together with certain court files attached thereto. Before discussing the law, we will briefly set out the facts necessary to an understanding of issues in the case.

Patrick W. Stanton, of Heartwell, Kearney county, Nebraska, made a will on March 6, 1925, giving $300 to the local Catholic church, and then dividing his property equally, with slight exceptions, between his children and grandchildren.

On January 25, 1926, the Kenesaw State Bank secured a judgment against William P. Stanton, a son, in the amount of $1,125, with interest at 10 per cent., and properly filed the same.

On June 20, 1927, a codicil was added to the will because of the death of a granddaughter, whose share was therein given to her father.

The testator died April 17, 1929, and on September 19, 1929, his will was admitted to probate.

Among the assets of the estate were two notes given by the son, William P. Stanton, to his father, both dated October 17, 1921, one for $600, the other for $204.54. Upon the first note appeared a payment of $6 under date of December 5, 1925, and upon the second note two payments were indorsed, one for $20 on November 7, 1921, and another for $6 on December 5, 1925. The final decree found the amount due the estate from this heir on these two notes was $1,109.11, and that, the maker of the notes being insolvent, the executor was unable to collect anything from him.

In said final decree the judgment debtor, William P. Stanton, was given his one-eighth distributive share in the real estate, subject to his indebtedness to the estate in the sum of $1,109.11.

On April 4, 1930, one of the devisees began an action in the district court to partition this real estate. The Kenesaw State Bank filed a cross-petition, setting up its judgment and asking that it be declared a first lien on William P. Stanton's share in said real estate.

The decree of the district court denied the prayer of the cross-petition, and found that the devisees of Patrick W. Stanton had a first lien on William P. Stanton's share of the real estate devised to him for the amount due the estate on his two notes, and that the lien of the Kenesaw State Bank was the second lien thereon. From this decree the Kenesaw State Bank has appealed.

From this statement it clearly appears that the sole question that comes to this court for decision, and a question which this court has never passed upon before so far as we are able to find, is this: Does the judgment creditor have a lien on real estate given an heir in a devise under the will which is prior to the lien of a debt due to the testator, there being no mention made of the debt due to the testator in the will?

The bank contends that its judgment was duly entered of record before the testator made a codicil to his will, and claims he could have protected his estate if he had wanted to when he made that codicil; that he could have provided that the debt to him from his son William should be a charge against the portion of the real estate which he had devised in the will to his son William. Of all the cases cited by them, the bank's counsel claim that the case of *In re Von Ruden*, 22 Fed. (2d) 860, is the nearest in point, which says: "On the death of Henry Von Ruden, title to his real estate passed to his heirs, free of any claims of his on his estate against them. He had it within his power to charge their interests with debts by will, but he did not do so. It is a fair assumption that he intended them to take the interest the law gave them in his real estate without encumbrance." Other cases are cited to the same effect.

To the contrary, there is no holding cited from our

Nebraska court which requires that a testator refer to a debt due him from an heir in his will or it will be considered as canceled.

Appellees insist that, because of the fact that he did not mention this debt owed to him by his son in this codicil, it cannot be construed to mean that he intended to cancel the debt, especially because the father had received three payments, as shown by indorsements made on the notes which kept the notes legally alive.

In discussing the law of the case, we are at the outset met by the term "retainer," which is defined as the right to have the debt of the legatee or distributee charged to him in the adjustment of the legacy or the distributive share. This right to retainer rests upon the broad principles of equity. *Oxsheer v. Nave,* 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98.

The right of retainer is more correctly applied in such a case than the term "set-off," which exists only when the obligations of both parties are debts, but in these cases the interest of an heir in his ancestor's estate is not technically a debt due him from the estate, and so the term "retainer" is more accurate.

All of the courts uniformly apply the doctrine of retainer to personal property, but some deny it as to inherited real estate, such as Arkansas, Florida, Iowa, Massachusetts, Michigan, New Jersey, Tennessee, and Virginia. The leading case supporting the right of the creditor as against the estate is *Marvin v. Bowlby,* 142 Mich. 245, 105 N. W. 751, 113 Am. St. Rep. 574, 7 Ann. Cas. 559, which cites and analyzes the numerous decisions on this question holding that the distributee's share of the real estate of an heir who is debtor to the estate of his ancestor is not chargeable with such indebtedness, either as against the land or the proceeds of the sale thereof. This *Marvin v. Bowlby* case implies that no distinction is made between real and personal property, but both are considered as one common mass or fund, and pass alike into the possession and control of an administrator for the purpose of ad-

ministration and distribution of the surplus among the heirs.

In discussing the case of *Marvin v. Bowlby, supra,* the supreme court of Oklahoma said that the case was in accord with the common law of England, in which the real estate of a deceased person was not liable to answer even his own simple contract debts, but that this is not the law in Oklahoma. *In re Dayton's Estate,* 173 Okla. 180, 46 Pac. (2d) 933.

In *Bruce v. Farrar,* 156 Va. 542, 158 S. E. 856, 75 A. L. R. 872, it was held that the indebtedness of a son to his father, who had died intestate, may not be deducted from his share of the realty as against his judgment creditor where by statute real estate descends directly to the heir. This decision also reviews the authorities on both sides.

"In the majority of jurisdictions, however, this exception in regard to real estate as to the general rule that an executor or administrator may retain a debt due from an heir or legatee is not recognized, and hence it is that a debt due to the estate from an heir may be deducted from his distributive share of the proceeds of real estate which has been sold in process of administration. The view taken by the courts that refuse to recognize the exception seems to be that the heir takes his share in the realty of the intestate subject to all equities existing in favor of the estate. And this has been held to be the rule applicable under statutes by virtue of which the real property of an intestate is made chargeable with the payment of debts equally with the personalty, except that the personalty must first be exhausted." 11 R. C. L. 247, sec. 279.

The conflict existing between the courts cannot be reconciled. A great majority of our states now apply the doctrine of retainer to inherited real estate. Among the well-considered cases from these states might be cited the following showing how the question arose:

"An administrator has the right to subject lands of his intestate to the payment of a debt due by an heir * * * to the estate * * * in preference to the claims of a purchaser

from the heir, and likewise in preference to the lien of a judgment creditor of said heir which attached to said lands on the death of the ancestor." *Streety & Co. v. McCurdy,* 104 Ala. 493, 16 So. 686.

"Where money of an estate is advanced to one heir, the other heirs have an equitable lien on decedent's land to cover such debt and their lien is superior in equity to that of a judgment creditor of the heir." *Reed v. Ragsdale,* 230 Ala. 683, 163 So. 324.

"The heir of a decedent is entitled to his distributive share of real property belonging to the estate only after all equities in favor of the estate against him personally have been satisfied." *Blackwood v. Blackwood,* 120 Kan. 72, 242 Pac. 451. See, also, *Head v. Spier,* 66 Kan. 386, 71 Pac. 833.

"Judgment creditor who recorded abstract of judgment against heir of estate had no interest in land of estate, where heir's interest in estate had been extinguished in settlement of her indebtedness to estate." *Patranella v. Smith,* 102 S. W. (2d) (Tex. Civ. App.) 297.

"Right of an executor to appropriate the distributive share of one of the heirs * * * to the payment of debts due by the heir to the testator is superior to the lien of a judgment against the heir." *Johnson v. Jones,* 54 Ga. App. 456, 188 S. E. 279.

"In proceedings for partition of property of mother's estate, indebtedness of son to estate should be considered as an asset of the estate, and set apart to son as part of his distributive share, even though the effect of such allotment would be to diminish or eliminate acreage in land set apart to him." *Young v. Hollingsworth,* 16 S. W. (2d) (Tex. Civ. App.) 844.

The New Mexico court recently held: "That a claim against an heir is barred by the statute of limitations should not prevent the application of the doctrine of retainer; * * * such statute barring the right of action, and not the debt itself." *In re Sheley's Estate,* 35 N. M. 358, 298 Pac. 942.

Two of the exhaustive cases holding with the majority are *Stenson v. Halvorson Co.*, 28 N. Dak. 151, 147 N. W. 800, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289, wherein numerous cases are analyzed, and *Loverett v. Veatch*, 268 Ky. 797, 105 S. W. (2d) 1052, decided in May, 1937, which is the latest case we have been able to find. The father died intestate, and one son had given the father a note for more than $6,000, and it was held in the last case that "an heir's indebtedness to the estate is deductible from the heir's interest in both personalty and realty inherited from estate."

In the text it is said: "We have said enough to direct the attention of the reader to sources which demonstrate that no such distinction should be drawn, and which conclusion is supported by irrefutable logic, and wherein the alleged distinction is dissipated as being shadowy and unsupported by either reason or justice. * * * We conclude that the doctrine of retainer or set-off should apply equally to both inherited personal property and inherited real estate."

Iowa is one of several states which has changed its stand on this matter, as it first took the stand against applying the right of retainer to inherited real estate, as set out in *Russell v. Smith*, 115 Ia. 261, 88 N. W. 361, but in a more recent case of *Woods v. Knotts*, 196 Ia. 544, 194 N. W. 953, seriously criticized its former opinion, and expressed doubt as to the soundness of the reasoning of the courts in drawing a distinction between the application of the right of retainer in cases of inherited personal property and rejecting it in the case of real estate. The Iowa court now holds: "Where the deceased had, as surety, paid certain claims against an heir, and the heir was insolvent, his share of the real property will be offset against the claim of the deceased; the personal property being entirely insufficient to offset the indebtedness." (194 N. W. 953.)

In *Wilson v. Channell*, 102 Kan. 793, 175 Pac. 95, 1 A. L. R. 987, it is said: "An indebtedness owing by an heir to his ancestor, remaining unpaid on the final settlement of

the estate, constitutes an equitable lien upon such heir's distributive share of the real property belonging to the estate, superior to the lien of a judgment existing and docketed against him at the time of the death of his ancestor; and, after such final settlement, the interests of the other heirs in the real property are paramount to the lien of the judgment creditor."

In 18 C. J. 965, it is said: "The right of a creditor is not only subject to the priority of the debts of the intestate, but also the share which he can reach is that which remains after the deduction of the indebtedness, if any, of the heir * * * to the estate." And at page 966 it is stated: "The indebtedness of heirs * * * is to be deducted from their shares in preference to the claims of their other creditors,"—citing cases from Kentucky, Maine, Massachusetts, Missouri, New York, North Dakota, and Pennsylvania.

Other cases may be cited: *Wheeler & Motter Mercantile Co. v. Knox*, 136 Ark. 95, 206 S. W. 46; *Harvey v. White*, 46 R. I. 470, 129 Atl. 263; *Chase Nat. Bank v. Sayles*, 30 Fed. (2d) 178.

In Nebraska we have the case of *McClave v. McClave*, 60 Neb. 464, 83 N. W. 668: "Advancements made by a father to a son may properly be deducted from the distributive share of the latter in the estate of the deceased father." In this case it is said: "If the lien of the estate proves to be superior to that of the attaching creditor in Ohio, that is the misfortune of such creditor, but certainly it constitutes no error on the part of the trial court in this action." See, also, *Brown v. Webster*, 87 Neb. 788, 128 N. W. 635.

And, again: "Where the legal title to real estate is in the name of the judgment debtor, nevertheless the lien of a judgment against him attaches only to the actual interest which he has in the real estate." *Roberts v. Robinson*, 49 Neb. 717, 68 N. W. 1035.

The nearest Nebraska case appears to be *First Trust Co. v. Cornell*, 114 Neb. 126, 206 N. W. 749, which is right in point, except that it involves only personal property, while

the case at bar involves real estate. When Dr. B. L. Paine died, March 13, 1921, his will gave to Herman L. Cornell a legacy of $2,000. The will was admitted to probate on April 11, 1921, and on April 30, 1921, Cornell assigned his legacy of $2,000, while he was indebted to the testator on notes in the sum of $15,000, which had not matured on the date of his assignment of his legacy, and the assignment was immediately filed in the probate proceedings in Dr. Paine's estate. The district court held that the assignment of this legacy was good, but the decision on appeal to this court was reversed, and this court held: "Where the distributee is indebted to the estate, it is the duty of the executor to retain from his share the amount of such indebtedness. * * * And it is against conscience that he should receive anything out of such funds without deducting therefrom the amount of the funds which is already in his hands as a debtor to the estate."

In an action in the circuit court of appeals for the eighth circuit, involving an attempt to secure the return of a portion of the $212,843.70 federal estate tax paid in the George A. Hoagland estate, it was held: "Decedent's real property in Nebraska *held* properly included in gross estate for determining tax, as property subject to payment of administration expenses." *First Trust Co. v. Allen,* 60 Fed. (2d) 812, affirming 51 Fed. (2d) 1069. Judge Booth cites section 30-1109, Comp. St. 1929, providing as to the proceeds of land sold to pay debts, and refers to *Reckewey v. Waltemath,* 28 Neb. 492, 44 N. W. 659, which holds that only the residue of an estate after payment of debts passes to the heirs.

"Section 30-406, Comp. St. 1929, vests the executor or administrator with 'a right to the possession of all the real as well as the personal estate of the deceased * * * until the estate shall have been settled, or until delivered over * * * to the heirs or devisees.' We have sustained the right of the executor and administrator, under this statutory provision, as a general rule, to maintain ejectment for real estate, pending payment of debts and settlement of

the estate." *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644.

In so far as this section applies to the facts in this case, section 30-233, Comp. St. 1929, reads as follows: "The estate, real or personal, given. by will to any devisees or legatees, shall be held liable to the payment of the debts, expenses of administration, and family expenses, in proportion to the amount of the several devises or legacies."

This subject, which has never required an opinion by this court before, is of the greatest interest. The courts of various states decide differently on the same state of facts.

To this court it appears that, if an heir owes an estate, and if his share of the personal property is not equal to the amount he has received, his share of the real estate ought to be held for the payment of the remainder of his debt, and he should receive that much less.

There is no substantial justification for a less equitable rule in favor of the estate, so far as real property is concerned, than concerning personal property.

The Kenesaw State Bank, appellant, secured a judgment against the son, William P. Stanton, and is entitled to its money, if the debtor has it. This son also owed his father and gave his father notes for such indebtedness. While the father did not reduce his notes to a judgment against his son, they are still a prior indebtedness against the son's share in the real estate. The bank may consider this ruling a hardship, yet its judgment is a lien against what? It is a lien against all of this insolvent son's net share in his father's estate, and against that share the bank's judgment is in law a first lien.

To illustrate, we consider it would be a travesty on justice to say that, if a son borrowed a thousand dollars of his father, and another thousand dollars of a bank, and inherited a legacy of a thousand dollars from his father's estate, he need not pay the estate a dollar on what he owed his father, and the bank would get the son's full legacy, and the other heirs would lose the thousand dollars due from the son to the father.

We conclude that the trial court was right in finding that the indebtedness of William P. Stanton to his father's estate was a first lien upon his distributive share of the real estate in said estate, and was superior to the lien of the bank's judgment against him.

AFFIRMED.

CARTER, J., dissenting.

This is a case of first impression in Nebraska and on which there is a division of authority in other jurisdictions. I quite agree that an heir's distributive share of the personal estate may be applied by the administrator or executor in payment of a debt due the estate by such heir. The reason is that the personal estate passes to the administrator or executor, and, while it is in the possession of such administrator or executor, he may retain a sufficient amount of a devisee's share in the personal property to satisfy his claim against him. It is this situation that gives rise to the use of the term "retainer." But the title to the real estate passes directly to the heir immediately upon the death of the decedent. Such real estate or the proceeds thereof is never in the hands of the administrator or executor and consequently there is nothing for him to "retain." In my judgment the better rule is that, where an heir is indebted to the estate of his ancestor, neither the heir's distributive share of the real estate of such ancestor nor the proceeds of a sale thereof in the hands of an administrator or executor is chargeable with such indebtedness, which should be collected in the same manner as other debts due the estate.

The necessary effect of the majority opinion is to add to the plain provisions of our statute governing the descent of real estate, by judicial fiat, conditions and exceptions never enacted by the legislature or contemplated by it.

I am authorized to say that Mr. Justice Eberly, though not participating in the decision of this case, concurs in the propositions of law stated in this dissent.

DAY, J., concurs in the foregoing dissent.